IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

MILFORD THOMAS WASHINGTON, JR.,   *

    **Plaintiff,**   *

v.      Case No.: GJH-17-3747

     *

FIRST TRANSIT, INC.,[1] *et al*,

     *

    **Defendants.**

     *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

In this suit, Plaintiff Milford Thomas Washington, Jr. has sued Defendants First Transit, Inc. ("First Transit"), and David Arey, First Transit's Human Resources director, for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* A number of motions are now pending before the Court, including Defendants' Motion to Dismiss, ECF No. 9, and Washington's Motion to Amend, ECF No. 17. No hearing is necessary. See Loc. R. 105.6 (D. Md. 2016). For the following reasons, Washington's Motion to Amend, ECF No. 17, is denied and Defendants' Motion to Dismiss, ECF No. 9, is granted.

**I.     BACKGROUND[2]**

Plaintiff Milford Washington identifies himself as an "African American male, [who] was an incarcerated person from 2004[] through 2015." ECF No. 1-2 ¶ 7. On August 8, 2017, Washington applied to work as a driver for Defendant First Transit. *Id.* After interviewing for the

---

[1] In his Complaint, Washington named as Defendant "First America; a corporation doing business as First Transit." ECF No. 1 at 1. Defendants have clarified that the proper party is First Transit, Inc., which Washington has not objected to. ECF No. 9 at 1 n.1. Thus, the docket shall be modified to substitute First Transit, Inc. as the proper Defendant.

[2] Unless otherwise stated, the background facts are taken from Washington's Complaint, ECF No. 1, and are presumed to be true.

1

job, Washington was given a "Conditional Offer of Employment" which was "contingent upon completing and passing a pre-employment background check." *Id.* On August 28, Washington attended a job training in Gaithersburg, Maryland. *Id.* ¶ 9. Two hours into the training, the instructor took a roll call of the attendees; Washington's name was not on the list of registered attendees. *Id.* The training instructor reported this to Human Resources, and Washington was given a letter, signed by Defendant David Arey on August 21, 2017, informing him that "a background check was conducted and potentially adverse information was obtain[ed]. You are now considered ineligible for employment based on this information." *Id.* The background check for Washington revealed convictions for Carrying a Dangerous Weapon, ECF No. 1-5 at 4,[3] Shoplifting, *id.* at 5, Forgery of checks, *id.* at 9–13, Possession False ID, *id.* at 13–15, along with a number of charges which had not been fully prosecuted.

Washington appealed First Transit's rescission of his employment offer, and filed a claim with the Equal Employment Opportunity Commission ("EEOC").[4] On his Intake Questionnaire, Washington identified his national origin as being "Melaninite Nubian" and his race as "Black or African American." ECF No. 1-7 at 4. In response to the majority of the questions on the Intake Questionnaire, Washington directed the EEOC to his "Supplement-Complaint." *Id.* at 8. In his Supplement, Washington stated, *inter alia*, that:

> The majority of First Americas [sic] applicant and employees in the Washington D.C. Metropolitan area are African American and other minorities. I am an African American Male who has recently been released from incarceration after ten years. Statistics and studies have shown that African American males are going to be negatively affected by neutral policies and practices. The neutral employment practice and policy utilized by First America had and has a disproportionate negative effect upon me.

---

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.
[4] In his Complaint, Washington alleges that he filed his EEOC charge on August 2, 2017, which is before the date that he applied to work for First Transit. The EEOC Intake Questionnaire, attached to Washington's Complaint, indicates that the EEOC received his Intake Questionnaire on September 22, 2017. ECF No. 1-7 at 4.

2

> First America has a neutral policy that resulted in excluding me from employment based upon my past criminal conduct and because I am an American African of slave descent . . . .

*Id.* at 8. Washington further stated that First Transit had not developed an "Individualized Assessment" of his case. *Id.* at 9. Based on this Intake Questionnaire, a charging document was prepared which Washington signed on September 22. In the section of the EEOC charging document titled "Discrimination Based On," only the boxes for "Race" and "Sex" are checked, and the box for "National Origin" is blank. *Id.* at 3. The summary box states, in part:

> On August 28, 2017, I learned that I was not hired due to my past criminal conduct. I am aware the majority of the employer's applicants and employees in the Washington D.C. Metropolitan area are African American and other minorities and females. I believe I was discriminated against because of my race (African American) and sex (Male) . . . .

*Id.* On September 26, 2017, the EEOC issued a dismissal and notice of right to sue. *Id.* at 1–2.

On December 19, 2017, Washington, proceeding *pro se*, initiated this suit by filing a Complaint. ECF No. 1-2. Washington stated eleven claims under Title VII for "Permanent Exclusion," "Disparate Impact," and "Disparate Impact Liability." *Id.* at 5–10. Each claim states essentially the same allegation, although the various claims make varying references to Washington's different past criminal convictions or charges. These claims allege that "in violation of Title VII's National Origins mandates" First Transit's "neutral employment policy" had a "disparate impact" upon Washington by stating "that criminal felony and or misdemeanors in Washington, D.C. did not meet company standards." *Id.*

On February 27, 2018, Defendants filed the now-pending Motion to Dismiss, arguing that Washington did not raise a claim regarding his national origin with the EEOC, and thus he did not exhaust his administrative remedies; even if he had exhausted his administrative remedies, Defendants argue, his Complaint nonetheless fails to plausibly state a claim. ECF No. 9-1.

At some point, Washington became aware that a class action alleging similar facts to his Complaint had been brought against the Washington Metropolitan Transit Authority ("WMATA") and its contractors (of which First Transit is one) in the United States District Court for the District of Columbia. On March 19, 2018, Washington filed a Motion to Stay and Hold Case in Abeyance while he attempted to join the class action.[5] ECF No. 13. On April 23, 2018, Washington submitted a Motion for Leave to Amend, ECF No. 17, along with a proposed Amended Complaint, ECF No. 17-1. The proposed Amended Complaint adds some additional factual context regarding First Transit's relationship with WMATA, and replaces references to Title VII's "national origins" clause with the "disparate impact clause." *See, e.g.*, ECF No. 17-1 ¶¶ 14, 15, 17, 21. Defendants oppose Washington's Amended Complaint, arguing that it fails to comply with this Court's Local Rules and is futile. ECF No. 20. Finally, on May 16, 2018, Washington forwarded to the Court a letter that he had received from the EEOC. ECF No. 22. In this correspondence, on April 17, 2018, Washington explained to the EEOC that the EEOC had erroneously failed to check the "National Origin" box on his EEOC charging document. *Id.* at 3. On May 8, 2018, the EEOC acting director responded that "there is no basis for changing the determination of September 26, 2017." *Id.* at 2. Defendants filed a Motion to Strike this correspondence, ECF No. 23, arguing that it is an impertinent document, ECF No. 23-1 at 3. All motions have been fully briefed.[6]

---

[5] Washington sought a stay "until finalization of the WMATA settlement; that is, (1) until the Settlement Administrator agrees to add your Plaintiff as a Class Member, and (2) when the court conducts its Fairness Hearing." ECF No. 13 at 6. Washington refiled this Motion on July 30, 2018. ECF No. 27. The Court denies Washington's Motion as moot, as the settlement has been approved. *See Little v. WMATA*, 14-cv-1289, ECF No. 253 (D.D.C.).

[6] Also pending before the Court is Washington's Motion for leave to file a surreply in opposition to Defendants' Motion to Dismiss, ECF No. 19, which the Court grants.

## II.     STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.")).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

The Court is mindful that Washington is a *pro se* litigant. A federal court must liberally construe *pro se* pleadings to allow the development of potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Cruz v. Beto*, 405 U.S. 319 (1972). Liberal construction does not mean, however, that this Court can ignore a clear failure in the pleadings to allege facts sufficient to state a claim. *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990).

## III. DISCUSSION[7]

### A. Motion to Amend Complaint

The Court first considers Washington's Motion for Leave to Amend Pursuant to Rule 15. ECF No. 17. Federal Rule of Civil Procedure 15 provides that a party may amend its pleading once as a matter of course within "21 days after serving it" or "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Fourth Circuit has "interpreted Rule 15(a) to provide that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (internal quotation omitted). "An amendment is futile if it could not survive a motion to dismiss for failure to state a claim." *Cutonilli v. Maryland*, 251 F. Supp. 3d 920, 923 (D. Md.), *aff'd,* 696

---

[7] As an initial matter, to clarify the record before it, the Court grants Washington's Motion for Leave to File a Surreply, ECF No. 19, and denies Defendants' Motion to Strike Plaintiff's Correspondence Regarding EEOC Letter, ECF No. 23. The Court liberally construes *pro se* plaintiffs' pleadings, *Erickson v. Pardus*, 551 U.S. at 94, and will give Washington more leeway to file supplemental arguments and exhibits to his pleadings than it would a represented plaintiff. The Court notes, however, that while it considers the EEOC correspondence and Washington's surreply, neither document is persuasive—in fact, the EEOC correspondence seems to strengthen Defendants' case—and the Court ultimately will rule in favor of Defendants.

F. App'x 648 (4th Cir. 2017), *cert. denied,* 138 S. Ct. 456, (2017) (quoting *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995)). This Court's Local Rule 103.6 further provides that a party "requesting leave to file an amended pleading" must file a copy of the proposed amended pleading, Rule 103.6(a), along with "a copy of the amended pleading in which stricken material has been lined through or enclosed in brackets and new material has been underlined or set forth in bold-faced type," Rule 103.6(c). Furthermore, Local Rule 103.6(d) provides that "[b]efore filing a motion requesting leave to file an amended pleading, counsel shall attempt to obtain the consent of other counsel."

Here, Washington's Amended Complaint would be futile, as it would not survive a motion to dismiss.[8] Washington's proposed Amended Complaint states eleven counts of violations of Title VII, under a theory of disparate impact. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, "prohibits employment discrimination on the basis of race, color, religion, sex, or national origin" even where conduct is "not intended to discriminate but in fact [has] a disproportionately adverse effect on minorities (known as 'disparate impact')." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). Under this theory of liability, a plaintiff must show that an employer uses "a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin." *Id.*; 42 U.S.C. § 2000e–2(k)(1)(A)(i).

In his Amended Complaint, Washington alleges that First Transit is a contractor operating a bus service called "Metro Access" for WMATA. ECF No. 17-1 ¶ 1. As a WMATA

---

[8] Defendants also argue that Washington's Motion to Amend should be denied as he did not comply with the Local Rules. ECF No. 20 at 1. Indeed, "[c]ompliance with the Local Rules is not optional. . . . As such, even pro se litigants must follow them." *Coulibaly v. J.P. Morgan Chase Bank, N.A.*, No. CIV.A. DKC 10-3517, 2011 WL 3476994, at *24 (D. Md. Aug. 8, 2011). As the Court concludes that Washington's proposed Amended Complaint is futile, however, it needs not determine whether Washington's non-compliance with the Local Rules is egregious enough by itself for the Court to deny Washington's Motion to Amend.

contractor, First Transit was required to use a background screening policy referred to by Washington as the "2011 policy" in hiring employees. *Id.* Washington alleges that the 2011 policy was "inconsistent with the business necessity standard" and "result[ed] in disparate impact" as he was "permanently exclude[d] . . . from employment . . . ." *Id.* ¶ 3. In another law suit, Washington explains, plaintiffs have challenged WMATA's use of the 2011 policy as being "overly broad and unnecessarily punitive . . . ." *Id.* ¶ 15. Washington explains that in that suit, the plaintiffs alleged that the 2011 policy "bar[s] from employment well-qualified workers, a disproportionate number of whom are African Americans." *Id.*

Washington has not pleaded sufficient facts to plausibly state a claim of disparate impact. While Washington states in a conclusory fashion that Defendants' background screening policy "caused disparate impact discrimination," he has not pleaded sufficient facts alleging such. Specifically, Washington has not pleaded any facts alleging that minorities make up a disproportionate number of incarcerated persons, or that they make up a disproportionate number of the job applicants who are rejected under Defendants' policy.[9] Thus, the proposed Amended Complaint fails to state a Title VII disparate impact claim, would not survive a motion to dismiss, and is futile. Washington's Motion to Amend, ECF No. 17, is therefore denied.

### B. Motion to Dismiss Initial Complaint

Having denied Washington's Motion to Amend, the Court next considers whether Washington's initial Complaint, ECF No. 1, alleged facts which plausibly stated a claim to survive Defendants' Motion to Dismiss, ECF No. 9.

First, the Court notes that Washington's initial Complaint is barred because he has failed to exhaust his administrative remedies. "Before a Title VII plaintiff can bring a formal suit, he

---

[9] Compare *Little v. WMATA*, 14-cv-1289, ECF No. 221-1 ¶ 4 (D.D.C.) (in class action Complaint, alleging that "African-Americans in the Washington, D.C. metropolitan area are more likely to have criminal convictions than members of other racial groups").

must file an administrative charge with the Equal Employment Opportunity Commission (EEOC). This charge frames the scope of future litigation." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 963 (4th Cir. 1996). "Thus, a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). "[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." *Id.*

In his initial Complaint, Washington repeatedly states that he is alleging that he was discriminated against on the basis of his national origin. *See, e.g.*, ECF No. 1 at 5; ECF No. 1-2 ¶¶ 1, 14–35. In his EEOC charging document, however, in a section asking him to identify what his charge of "Discrimination [is] Based On," Washington checked only the boxes for "Race" and "Sex" and left the "National Origin" box blank. ECF No. 1-7 at 3. Thus, Washington failed to exhaust his administrative remedies for his national origins claim. *Jones*, 551 F.3d at 300.[10]

---

[10] Washington argues that he intended to file a claim of national origin discrimination, and points to the fact that on his initial EEOC Intake Questionnaire he answered the question "What is your National Origin" with "Melaninite Nubian." ECF No. 19-1 at 4; *see also* ECF No. 1-7 at 4 (Intake Questionnaire). While EEOC Intake Questionnaires may be considered charging documents for certain purposes, *see Federal Exp. Corp. v. Holowecki*, 552 U.S. 389 (2008), here in his Intake Questionnaire, Washington never stated he was discriminated against on the basis of his National Origin. Washington signed the EEOC Charging Document, which had only "Race" and "Sex" checked as discriminatory bases, and swore that the document was true to the best of his knowledge. ECF No. 1-7 at 3. Washington did not point out to the EEOC that he wished to make a charge of discrimination on the basis of National Origin until after he initiated this suit. *See* ECF No. 22. Thus, he did not exhaust his administrative remedies for his National Origin claim. *See Tillbery v. Kent Island Yacht Club, Inc.*, No. CIV.CCB-09-2956, 2010 WL 2292499, at *5 (D. Md. June 4, 2010), *aff'd*, 461 F. App'x 288 (4th Cir. 2012) (disregarding the plaintiff's argument that alleged discrepancies in the EEOC charge were simply clerical errors when the plaintiff executed the EEOC charge under penalty of perjury and did not later take action to amend the charge); *Sloop v. Mem. Mission Hosp., Inc.*, 198 F.3d 147 (4th Cir. 1999) (where plaintiff failed to check the retaliation box on her charge and later

Even if he had exhausted his administrative remedies Washington's initial Complaint fails to state a claim for the same reasons as his proposed Amended Complaint. Specifically, in his initial Complaint, Washington does not plead any facts alleging that Defendants' screening policy disproportionately impacted minorities. Thus, he fails to state a claim of disparate impact.

Finally, regardless of the merits of his Complaint or whether he exhausted his administrative remedies, the Court dismisses Washington's claims against Defendant Arey. The Fourth Circuit has made clear that "Title VII . . . foreclose[s] individual liability . . . ." *Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 180 (4th Cir. 1998). *See also Shields v. Federal Exp. Corp.*, 120 Fed. App'x 956, 960 n.2 (4th Cir. 2005) (affirming district court's dismissal of Title VII claims against individual defendant). Thus, Washington cannot bring a claim against Defendant Arey in his individual capacity under Title VII.

## IV. CONCLUSION

For the foregoing reasons, Washington's Motion to Amend, ECF No. 17, is denied and Defendants' Motion to Dismiss, ECF No. 9, is granted.[11] A separate Order shall issue.

Date: August 1, 2018                  /s/
GEORGE J. HAZEL
United States District Judge

---

sent a letter to the EEOC asking how she could add a retaliation claim, but took no further action to do so, she had failed to exhaust her administrative remedies with regard to that claim).

[11] As discussed above, Washington's Motion for Leave to File a Surreply, ECF No. 19, is granted. Washington's Motion to Stay, ECF No. 13, is denied as moot, and Defendants' Motion to Strike, ECF No. 23, is also denied.